212984 Lisa Bergman v. Jeremy Howard Argument not to exceed 15 minutes preside Mr. Benton Martin you may proceed for the appellate Good morning your honors may it please the court Benton Martin on behalf of Lisa Bergman I'm reserving three minutes for appellate Lisa Bergman is serving 25-50 years for second The trial court left Bergman essentially defenseless in the face of an onslaught of experts including six forensic scientists, two toxicologists, three medical examiners and her attorney had no more than a high school of education in chemistry as he explained repeatedly to the court in asking for a toxicology expert. Where I'd like to start is our argument that the Michigan Court of Appeals reached an unreasonable determination of the facts. In deciding that the lawyer had not explained the need for an expert and I pointed you to the district court's conclusions which I think are more articulate than mine on pages 1305 and 06 his decision where the district court said the Michigan Court of Appeals conclusion that Bergman's lawyer failed to adequately explain his need for a toxicology expert was unreasonable. I agree with that part of the district court's analysis. He also looked at four ways that the attorney had explained why there was a need for this expert to critically analyze the toxicology experts conclusions to help construct and questions that were aimed at casting doubt. He could have sought his own opinion on Ms. Bergman's blood levels and I think critically I think what is one of the critical facts that the state court didn't apprehend was that so the attorney himself could understand what was going on with these lab reports. Why do you think that's a determination of fact? I agree with the district court that appellate courts don't often engage in fact-finding they usually defer to the trial court because it's clearly erroneous. Why shouldn't we for instance analogize to ineffective assistance of counsel where there is historical facts about what happened where you would defer but the ultimate conclusion on sufficient performance or the ultimate conclusion on prejudice are legal conclusions really mixed questions but questions that courts review to no level. I would say that's essentially what the Michigan Court of Appeals found which is the reasons that you have just articulated were not sufficient reasons to warrant an expert and that was a legal conclusion about the scope of the process. I agree that's how the district court looked at it and I don't disagree with your way of analogizing. I do think that when you look at some of the case law that I've cited there is reasons why a mixed question of law and fact can be an unreasonable determination of the facts and I would particularly point you to the Kip versus Davis decision that I cited where they marched through different ways that something can be an unreasonable determination of the facts and a misapprehension critical to a petitioner's claim that undermines the reasonableness of the court's decision can be one of those. That's what I think happened here and I think that the district court when it was making its decision said that our argument was that the court of appeals thought that there had been no explanation given at all and that that isn't true. They recognized that there was some explanation but they just found that it wasn't sufficient. I think the problem is a little different than that and that when you look through the factual recitation by the Michigan Court of Appeals there are several things that are not addressed. They don't mention how the trial attorney had explained that he really didn't even know how to begin to look at these lab reports without talking to a professional and nowhere is that mentioned in the state court's opinion. I think that's overlooking a critical fact. I'm still troubled by the notion that appellate courts engage in fact-finding. Isn't that quite unusual? If your point is that the appellate court overlooked critical facts in its conclusion why not just say that it was an unreasonable application of a relevant legal standard because once you take these things into account about what the defense counsel did then the defendant was entitled to an expert toxicologist as a matter of law under the due process clause. It's quite strange. This is your second point. It strikes me as quite strange to say that the appellate court was really making a point in the fact that the defense counsel said nothing. I don't think. My argument is not that the Michigan Court of Appeals made a statement finding the fact that he said nothing. I think that when you look at, and we are arguing to be clear also that this was an unreasonable application of Supreme Court law and that she has a due process right to this expert. But when you look at 2254 D.2, there is a provision that allows for federal courts to review if there is an unreasonable determination of the facts. I don't necessarily think that means that the appellate court is engaging in fact-finding in the first instance. But when you look at the case law, it can be that they are misapprehending the record or that they are failing to look at critical facts in the record. So it's not that they are making an initial factual determination. It's not that they are resolving the credibility of a witness per se. It's that if they don't look at some of this evidence that is critical to making this determination, then that can be an unreasonable determination of the facts. At which point this court looks at the due process right without having to see if the facts are correct in this case. I saw you read the record. There was a colloquy and the end result was that the trial court said that, well, I don't see it now, at least with respect to retesting. But you can raise it again later and tell me why you need it. And the attorney said, well, I will file another motion that's more clear when I get the material I need. And then there's nothing else. Am I missing something? No, and I don't have the exact language in front of me. I think that is something that the district court here didn't address in terms of what did he sound like. I can't hear you. The district court did not address that that was some form of default if he didn't renew that motion. I'm not sure what else the attorney would have been able to say to the trial court at that point because without an expert to say exactly how this evidence could have been attacked, there really wasn't much more I think that Mr. Ladd, the trial attorney, could have told the trial court in terms of what an expert would have shown without first consulting with an expert. I believe he had sufficiently made his record as to why this expert was needed. That goes to the underlying standard, though, about when you're entitled to an expert. I must say, I read Ackie and then I read Medina. It strikes me that it's very difficult to even figure out what the governing legal standard is here. And the reason I say that is because Ackie found a due process right to a psychiatrist. And its method of extrapolating this right was to engage in Matthews v. Eldridge balancing of factors. So you consider the private interest at stake, the state interest, and the risk of error. But Medina essentially said, well, we're not going to do that anymore in the criminal context. There's specific procedural protections in the Fifth and Sixth Amendments, and we're going to adopt a historically rooted approach for determining what other criminal protections are appropriate in the criminal context as compared to the civil context, which is where Matthews v. Eldridge came from. And so I'm now looking at these two opinions, and I for the life of me don't even know whether I'm supposed to engage in Matthews v. Eldridge balancing to determine whether to extend Ackie or whether I should switch to Medina and apply a historically rooted test to determine what other types of experts are needed. And so I guess if I'm confused, how could we say there is a clearly established legal right that he was entitled to a toxicology expert? I don't even know what the legal standard is. Do you know what's your view of what the legal standard is? That's why I've pointed this court back further to some of the cases that were relied on in AIC, in particular the way that it's formulated in BRIT, which I think is based on cases even before that, like Crane, where they're recognizing that someone who is poor should not be deprived of materials, raw materials, the raw basic materials needed for an adequate defense. And that language is what I would point the court to, and it is that you can't deprive someone of that necessary assistance. But how do you – I mean, you have to determine how to kind of go about discovering what's necessary. And Ackie, or I believe, or however you pronounce it, engaged in an analysis that is just different than what the court engaged in later. So do you think we should determine necessary, whether something is necessary, by engaging in a balancing type approach, or do you think we should look to history? I think either approach that this court takes, it turns out in Brooklyn's favor. I think when you look at the history, you're entitled to what is necessary for your defense. I think when you look at balancing, the only difference between this and AIC is that that was a death penalty case. And so arguably, if you're balancing, there's greater risk. But at the same time, this is evidence that was critical to determining guilt. And there really isn't a difference between psychology or psychiatric evidence and this type of evidence. It's a very complex science, toxicology. So to deprive defendants of that, I think, is really fundamentally unfair. Under either approach, I believe, we should prevail. Did the Michigan Court of Appeals apply the correct test and then just misapply it, or was it the wrong test? We're not making an argument that their application was contrary to. Our argument would be that it was an unreasonable application of AIC. So they did acknowledge the AIC case, but then it was an unreasonable application of that and finding that they hadn't made the necessary shot. So I'm still trying to trim that down. Is it that they used the wrong test or that they got the test right but unreasonably applied it? Correct. I think that they got the test right but unreasonably applied it. Thank you. Thank you, counsel. You're welcome. Thank you. Good morning, your honors. May I please have the court? Jared Schultz, assistant attorney general for the state of Michigan, on behalf of the respondent. Can you get the mic closer to you? Yes, I apologize. I don't know if it raises. I don't think it does. I think it's up as high as it'll go. Yeah, I think it's as high as it'll go. Okay, thank you. I'll try to lean over, your honors. Much better. So I think it's important in any habeas action to remember the posture of the case. I know that's especially true in this case because I think it's dispositive and ultimately controls the outcome. Section 2254 provides clear and strict rules for guiding this court's review. A petitioner must identify a holding from the Supreme Court that the state court's decision contradicted or was an unreasonable application of. Here, the petitioner, whatever the merits of the claim that there should be a right to a toxicologist or some other sort of expert in a certain case, whatever the merits of that claim, it doesn't matter here because the Supreme Court has never held that such a right exists. And therefore, the Michigan Court of Appeals' decision cannot be contrary to or an unreasonable application of clearly established federal law. Now, again, as I said, a petitioner must identify a holding from the Supreme Court. I think there's two ways that a petitioner tries to go about doing that in this case. And one is to look at the Britt-Griffin line of cases, and the other is to look directly at Aki. I don't need our homework here, Andrea. First, for the Britt-Griffin line of cases, all they held was that there's a general due process right to the basic tools of an adequate defense. But the Supreme Court has said when interpreting the AEDPA that the more general the rule, the more leeway courts have on a case-by-case basis in applying that rule. The Supreme Court has also said that a federal court on habeas review cannot refine or sharpen a rule, a general principle into a specific rule that the Supreme Court has not yet announced. Well, do you have an opinion on how we should go about determining whether some expert is necessary to the defense? You know, I mentioned the balancing tests versus the historical tests. Do you think we should just do both of those and just ask on a case-by-case basis, is this particular evidence necessary? Do you have any thoughts on that? Well, I don't think it matters in this case because the Supreme Court has not yet done that. If this was on direct review, I perhaps would have an opinion that, you know, you can do the case-by-case or the three steps in Matthews v. Aldridge or what have you. But it doesn't matter here because the Supreme Court has not gone through that analysis. The Supreme Court has gone through that analysis and said that for psychiatric witnesses, when the insanity defense is at issue, yes, those three factors weigh in the defense favor. They're entitled to a psychiatric expert. The Supreme Court has not done that with any other expert, with expert witnesses in general. The Supreme Court just has not done that. And therefore, on Habeas Review, this court can't do that. All this court can do is say, was it an unreasonable application of clearly established federal law for the Michigan Supreme – or the Michigan Court of Appeals? What do you think – your friend on the other side suggested that the Michigan Court of Appeals identified the correct legal rule but applied it unreasonably. And it's not even clear to me what the correct legal rule is. How do we determine – the Michigan Court of Appeals seemed to say, did you identify sufficient nexus to something in the case that requires this expert? Do you think that that is a legal rule that has been clearly established by the Supreme Court? Or do you think we're just kind of out to sea because the Supreme Court hasn't really articulated for us how we're supposed to go about this? Right, Your Honor. So I guess I'll start with the sufficient nexus test. I believe that comes from the Michigan Supreme Court's decision in People v. Kennedy. What Kennedy did was it said that AIC applies – or ACAE, I'm not sure how you pronounce it either – applies in these circumstances. And that was their interpretation of ACAE was that you have to have a sufficient nexus. I think they also quoted some other federal circuit courts to come up with that rule. And that exactly shows that that's not clearly established Supreme Court law. All that – the only rule that ACAE established was that you are entitled to a psychiatric witness. It didn't come up with a standard. It just said you are entitled to a psychiatric witness when one is – when insanity is an issue. It didn't come up with a legal framework for evaluating other experts. It just – it confined its analysis to psychiatric experts. That was the holding of the Supreme Court. So I think – and I don't think you can use ACAE in this circumstance to say that the Michigan Court of Appeals unreasonably applied it. I think you have to go back to the – what my opposing counsel points to is the Britt and Griffin line of cases. But because that is so general, the basic tools of an adequate defense, that doesn't say anything about what are the basic tools of an adequate defense. It doesn't say that experts are required in certain circumstances. What if you have a situation where the facts are abundantly clear that the only way the defendant could defend against the charge would be to show that the prosecution's experts were wrong about certain conclusions and the subject matter is very technical or requires expertise. I mean, are there any situations where you might say, yeah, the Supreme Court hasn't said that you're entitled to an expert in this particular situation, but there was no defense? Well, I understand what you're saying, Your Honor. However, I think that the rules that the Supreme Court has outlined for evaluating cases when EPA applies clearly say you cannot – there has to be a specific holding from the Supreme Court that addresses that issue. But what about the holdings that say that you're entitled to the material, the raw material that's necessary to assert the defense? Again, I guess I would point to the fact that that is a very general standard and the Supreme Court has repeatedly said that the more general the principle, the more leeway state courts have. But are there any situations where the violation of that general principle would be so obvious that you can't just rely on it? Yes. I think that – well, you always have to rely on EPA. I think – I understand what you're saying, Your Honor. I don't mean EPA. Correct. I mean the specific decision. Correct. So I think there could be a situation where it is so obvious that they violated the rule that he or she was entitled to the basic rules of adequate defense. However, because of the leeway given, I think that it has to be entirely obvious. And in this case, it just – it wasn't there. Okay. So let's just – how was she – as I understand basically the prosecution's case is that she had a bunch of – she had a lot of different substances and the prosecutor – there was no evidence that any of those substances were not within therapeutic limits. And so there's nothing inherently illegal about any of this. And then the theory is, well, the mix of all of them, or perhaps even one of them alone, made her unable to safely operate a vehicle and she knew that. So how do you – and you've got one expert who says, well, I don't – in my opinion, she wasn't good to drive. So how does she defend against that without having somebody who is able to say, well, that's not necessarily so. And for these reasons, because this chemical works like this and on and on. Or it might use her attorney on how to cross-examine that expert. Well, Your Honor, first – I guess first I would go against your point that these were not within therapeutic levels. That really is irrelevant. You know, all these drugs were powerful drugs. Powerful muscle relaxants were powerful painkillers.  So whether they're in therapeutical levels or not. But to your main point, Your Honor, I guess that's where I would go to my harmless error analysis here. This case was not about experts. This case was about the petitioner's past and what she knew. Whether she was intoxicated or not, she knew that when she took these drugs and then got behind the wheel, that she could not drive safely. She caused several accidents. She passed out behind the wheel. She was driving so erratically that the police were called on her. And that happened six times. And that's what the prosecution relied on. In fact, in the opening statement, the prosecution never once mentioned the opinion testimony. In her closing argument, the prosecution, when specifically addressing the psychiatry murder charge, never mentioned the expert opinion testimony. Instead, she went through, one by one, each of those different instances that showed she knew what would happen if she got behind the wheel while ingesting those same drugs. And she knew that she could cause an accident and that someone might die or be seriously injured as a result. And therefore, she normally created a very high risk that death or serious body injury would occur. The prosecution, the only time she ever even mentioned the expert opinion testimony was when she was outlining the elements of operating while intoxicated causing death. It was not within the psychiatry murder charge. The psychiatry murder charge, the other acts, were the prosecution's case. You said you describe it under harmless error. But I wonder if that goes to whether there's a violation at all in the sense of whether any type of right to expert assistance has been triggered. It depends on how important the expert will be to the case. In the inoculating, it was very important because insanity defense was the exclusive defense, I think, is what the decision said. So there really was no other defense. Here, the prosecutor really relied on the prior crimes. The defendant maybe didn't have experts, but the defendant had a pretty good defense. The defense was, everybody who saw me right after the accident suggested that I was perfectly competent. There was no suggestion that I was impaired. Do you think that this goes into, if we describe it at the highest level of generality of when it's necessary for a case, that this type of evidence goes into whether that standard has been satisfied? I think that's right, Your Honor. So, again, Ake said that when insanity is, I believe, seriously an issue or a serious issue in the case, that's when the defendant makes that showing. That's when they're entitled to an expert. I don't think the petitioner here has made that showing, precisely because of what you said, and it kind of dovetails with the harm's error analysis. This case, the toxicology, the expert toxicology evidence was not seriously an issue. Her past acts were what were seriously an issue. That's what this case was about. So, yes, I agree with you, Your Honor, that that goes to whether there's a violation at all. I think those analyses kind of go together and they interact and intertwine. So, yes, I agree, Your Honor. And I see my time is getting close to being up. If there are any more questions, I'd be happy to answer them. Otherwise, I'd ask the district court, you to affirm the district court. Thank you, counsel. I'd like to make three points. The first is I disagree, just in a factual manner, about the importance of this testimony. Could you get it closer to the mic, please? Thank you, Judge White. I apologize. The first point I'd like to make is on the factual issue, how important this was. I'd point you to the district court, page ID 1304, 1303-04, where it talks about the importance of Dr. Glenn's testimony and emphasizes that Dr. Glenn's testimony became a full appointment of the final arguments to the jury. The prosecution highlighted the testimony several times during its closing and reminded the jury of the testimony about the combination of these drugs and their effect of those drugs on the body. Really, that became one of the crucial issues exactly because Judge Murphy, her real defense was, I wasn't impaired that night given that people saw me and thought I was impaired. The paramedics didn't think I was impaired. Dr. Glenn's testimony really became extremely crucial. And there was no... I mean, you could articulate the rule as, I cannot present any other evidence to undermine the idea that I wasn't impaired. But she was, the defense counsel actually was able to bring out quite a bit of evidence that she wasn't impaired through these types of interactions. So why shouldn't we think if there is any type of constitutional right to a toxicologist, it should be when there's no alternative way to present that type of evidence? Because I think there's a real difference between that type of evidence that a layperson can put on about, I'm not impaired versus when someone comes up. And they emphasized her credentials, Dr. Glenn's credentials. She had a PhD. She was part of an elite institute. And the prosecution emphasized that in closing. And I think that when you have that type of evidence, it has a real effect on the jury. I point the court to Hinton from the Supreme Court, which doesn't address exactly this issue, but at the end of that opinion they talk about the serious deficiencies in forensic science used in criminal trials. And by one account invalid scientific evidence has contributed to 60% of all overturned criminal convictions. I think that speaks to how powerful this evidence is and how much of a risk it creates. And just one brief point on the issue of the standard here. And really even in Medina, it says an indigent criminal defendant is entitled to the minimum assistance necessary to ensure a fair opportunity to present his defense and to participate meaningfully in the judicial proceeding. I recognize that that's broad, but the Supreme Court's case in Panetti says, ethic does not require state and federal courts to wait for some nearly identical fact pattern before a legal rule must be applied. The statute recognizes that even a general standard may be applied in an unreasonable manner. We believe that's what happened here, so we'd ask for you to reverse. Okay. Thank you, counsel. The case is submitted. The clerk will call the roll, please.